IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
DEC 16 2015
Clerk, U.S District Court
District Of Montana
Missoula

| KEGAN JAMES SALTER, | Cause No. CV 15-20-M-DLC-JCL |
| --- | --- |
| Petitioner, | CV 15-23-M-DLC-JCL |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| LEROY KIRKEGARD, et al., | |
| Respondents. | |

This case comes before the Court on two applications by Petitioner Kegan James Salter for writs of habeas corpus under 28 U.S.C. § 2254. Salter is a state prisoner proceeding pro se.

On June 17, 2015, the Court ordered Respondents ("the State") to file certain documents from the record of the proceedings in state court. The State complied on July 6, 2015. Salter was given an opportunity to respond but did not do so. Order (15-20-M Doc. 15, 15-23-M Doc. 14) at 1.

**I. Preliminary Review**

The petitions are subject to preliminary review to determine whether "the petition and any attached exhibits" conclusively show that "the petitioner is not entitled to relief." Rule 4, Rules Governing § 2254 Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of

1

constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases.

## II. Background

Salter committed three separate felony offenses in 2010, when he was 18 years old. His federal petitions challenge only the second and third felonies, but to understand his claims and the state court record, all three are relevant.

### A. Issuing a Bad Check

In December 2009, Salter wrote insufficient-funds checks totaling $1,429.31. He pled guilty to issuing a bad check, a violation of Mont. Code Ann. § 45-6-316 (2009), on or about March 15, 2010, and was released on conditions pending sentencing.

On August 25, 2010, Salter was sentenced to serve five years in the custody of the Department of Corrections. Placement with the DOC gave the Department discretion to decide whether and when Salter should be placed in prison, in community confinement, or released in the community under conditions of supervision. *See* Mont. Code Ann. § 46-18-201(3)(a)(iv)(A). The written judgment

was signed on September 2 and filed on September 7, 2010. *See* Bad-Check Judgment (15-20-M Doc. 9-12) at 1-3.

### B. Escape

After Salter pled guilty to issuing a bad check, but before he was sentenced in that case, he was charged with escape, a violation of Mont. Code Ann. § 45-7-306 (2009).

The State alleged that, on March 31, 2010, Salter reported to his pretrial supervision officer, Adam Cole, for a routine urinalysis, one of the conditions of his release pending sentencing in the bad-check case. After the test was administered, Cole told Salter he was under arrest, took his personal belongings, and began walking Salter from the probation office to the jail. Salter "bolted and refused commands to return to custody." Aff. in Supp. of Information (15-20-M Doc. 9-2) at 2 ¶¶ 2-4.

According to Salter's federal petition, he had given the required urine sample and was waiting outside Cole's office for the result. Cole emerged from his office and said to Salter, "Let's go." Salter "fled the probation office." Am. Pet. at 4 ¶ 13A(i). *See also* Case Register Report (15-20-M Doc. 9-1) at 1 Entries 2-4; Information (15-20-M Doc. 9-4) at 1-2.

### C. Conspiracy to Commit Custodial Interference

At the same time Salter was charged with escape, he was also charged with

conspiracy to commit custodial interference, a violation of Mont. Code Ann. §§ 45-5-304(1) and 45-4-102(1) (2009).

The State alleged that, on May 29, 2010, a 16-year-old girl, K., disappeared from her home. On June 1, 2010, K.'s parents received a message from K. indicating that she was in Washington. K.'s parents did not give her permission to travel to Washington or Idaho and had prohibited her from being in Salter's company or in the company of Jay Edward Higgins. K.'s parents told police they advised both Salter and Higgins that K. was not permitted to be with them. The affidavit further averred that Higgins and Salter planned, via text message, that K. and Higgins would meet in Mineral County and then drive to meet Salter. K. reported that she, Higgins, and Salter's younger brother and sister drove to Kirkland, Washington, then to Salter's father's house in Sedro Wooley, Washington, and then to various other locations, all the while "hoping to avoid detection by the police." When K. grew tired of staying in a tent for three days, Salter tried to talk her out of leaving, and both he and Higgins were upset with her. Aff. in Supp. of Information (15-23-M Doc. 8-2) at 2-3 ¶¶ 2-5.

**D. Counsel's Surgery**

The escape charge and the custodial interference charge were filed and litigated together. On August 27, 2010 – two days after Salter was sentenced on the bad-check charge – Salter's counsel had a seizure and was hospitalized for a day or

4

two. He testified in a postconviction hearing that he underwent brain surgery to remove a tumor on September 13, 2010. *See* Evid. Hr'g Tr. (15-20-M Doc. 14-1) at 32:21-33:15.

### E. Plea Bargain

On October 18, 2010, the parties executed two separate but substantially identical plea agreements addressing disposition of the escape case and the custodial interference case. Salter agreed to plead guilty to escape and no-contest to the custodial interference charge. The State agreed not to seek to have Salter's sentences enhanced for prior felony convictions. Both parties agreed to recommend concurrent sentences of five years in prison, all suspended, consecutive to the five-year DOC commitment in the bad-check case. In contrast to the "variable custody" DOC commitment, the agreement that Salter's prison term should be suspended was essentially an agreement to probation; if the State believes an offender has violated the conditions of the suspended sentence, it must petition for revocation, and a judge decides whether to revoke the suspended sentence in whole or in part or to continue the offender on supervision. *See* Mont. Code Ann. §§ -201(3)(a)(iii), (4), -203(1), (5). The conditions of Salter's suspended sentence would be largely identical to his conditions on the bad-check conviction, minus the bad-check restitution obligation and with a few additional conditions specific to each offense. *See* Plea Agreement (15-20-M Doc. 9-9) at 1-2; Plea Agreement (15-23-M Doc. 8-

5

9) at 1-2. Salter also executed a document titled "Plea of Guilty and Waiver of Rights" in each case (15-20-M Doc. 9-10, 15-23-M Doc. 8-10).

On October 27, 2010, in a combined hearing, Salter entered his pleas and was sentenced on both charges. Change of Plea Tr. (15-20-M Doc. 9-6) at 3:15-19, 4:1-13, 5:2-21. Salter stated that he would "like to apologize to the family for not returning K. when I had the chance. In the end I did make her call her father and let him know where she was." *Id.* at 8:11-14. Salter was sentenced as the parties recommended in the plea agreements. *Id.* at 8:15-24; *see also* Judgments at 2 (15-20-M Doc. 9-13, 15-23-M Doc. 8-14).

In sum, therefore, Salter was convicted of three separate, unconnected felonies committed within six months in 2010 and received a total sentence of five years' commitment to the Department of Corrections, followed by a five-year prison sentence with all time suspended. He did not appeal.

**F. Motion to Withdraw Guilty Pleas**

On August 7, 2011, Salter filed a motion in the trial court, seeking to withdraw his pleas. *See* Mont. Code Ann. § 46-16-105(2). He contended that counsel was ineffective because he "withheld discovery, failed to adequately inform [Salter] of his rights, and pressured him to plead guilty." Mot. to Withdraw Plea (Doc. 9-14) at 4.

New counsel was appointed to represent Salter, and an evidentiary hearing

6

was held on February 22, 2012. The state court reviewed the case file and counsel's testimony at the hearing and concluded that all the evidence showed Salter's pleas were knowing and intelligent. Order (Doc. 9-22) at 2-5. Consequently, there was no good cause to allow Salter to withdraw his pleas. *Id.* at 11. The trial court denied Salter's motion on March 2, 2012. *Id.* at 12. Again, Salter did not appeal. *See* Case Register Report (Doc. 9-1) at 2.

### H. Federal Habeas Petition

The Court received Salter's federal petition on February 26, 2015. It will assume, for the sake of argument, that he filed it on January 11, 2015.[1] *See* Pet. (Doc. 1) at 4; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

### III. Salter's Claims

### A. Escape Case

In connection with the escape case, Salter alleges, first, that he "was not in restraints, was never in the Mineral County Jail," and "was never informed he was under arrest," so that he was not in "official detention," as the statute requires, at the time he ran away from the pretrial services officer. Am. Pet. (Doc. 3) at 4 ¶ 13A. He also contends that his escape conviction should have been a misdemeanor rather than a felony. *Id.*; *see also* Mont. Code Ann. § 45-7-306(3)(c).

---

[1] Salter filled out the form designed for filing a habeas petition in the Montana Supreme Court. He signed the petition on January 11, 2015, but did not state that he delivered it to prison officials that day. He mailed the petition to the Ninth Circuit Court of Appeals, which did not receive it until January 21, 2015. The Court of Appeals forwarded the petition to this Court.

Second, Salter alleges that counsel was ineffective because he did not properly investigate and did not present video footage showing that Salter was not in the Mineral County Jail; he led Salter to believe he would receive a significantly harsher sentence if he did not plead guilty; and he proceeded to sentencing "the day after" undergoing brain surgery. *Id.* at 5 ¶ 13B.

### B. Custodial Interference Case

In connection with the custodial interference case, Salter alleges, first, that the statute defining the offense gave him a complete defense because he talked K. into returning home before he was arrested. Pet. (15-23-M Doc. 1) at 4 ¶ 13A(i). This claim is addressed in a separate Order.

Second, Salter alleges that counsel was ineffective because he did not inform Salter of the State's lack of evidence and did not properly investigate the allegations; he proceeded to sentencing "the day after" undergoing brain surgery and refused to acknowledge Salter's objections; he led Salter to believe he faced 40 or more years with a persistent felony offender designation; and he failed to tell Salter he had filed a motion to dismiss based on statements made by K. and the State's lack of evidence. *Id.* at 5 ¶ 13B(i).

### IV. Analysis

The following analysis consolidates and reorganizes Salter's claims in the two petitions. Except for Salter's allegation that he is not guilty of conspiracy to

commit custodial interference, all his claims in both cases are addressed below.

The claims addressed below do not allege the same operative facts that Salter presented in the trial court in his motion to withdraw his guilty plea, nor did he pursue an appeal from the trial court's denial of the motion. Consequently, his claims were not fairly presented to the Montana courts. *See, e.g., Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008). As it is too late for him to return to present them now, they are procedurally defaulted. *See Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (en banc); *see also* Mont. Code Ann. §§ 46-21-102, 46-22-101; *State v. Root*, 64 P.3d 1035, 1037-38 ¶ 16 (Mont. 2003). They are likely time-barred as well. *See* 28 U.S.C. § 2244(d)(1).

Regardless, the most efficient course is to address these claims on the merits. *See* 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar).

### A. Salter's Claim That He Did Not Commit Escape

Salter agreed at his change of plea hearing that he ran away "after being arrested." Change of Plea Tr. (15-20-M Doc. 9-6) at 4:1-8. The State did not allege that Salter was physically restrained or in the Mineral County Jail when he ran away; Salter's current allegations that he was neither restrained nor in jail are irrelevant. The State alleged that Salter's probation officer told him he was under

9

arrest and began to escort him to the jail, albeit without handcuffs, when Salter fled. Aff. in Supp. of Information (15-20-M Doc. 9-2) at 2 ¶¶ 2-4.

In his federal petition, Salter claims he was told to wait in the hall for the results of the urinalysis test, and when Cole emerged from his office, Cole said to him, "Let's go." Am. Pet. at 4 ¶ 13A(i). In a state habeas petition, Salter alleged that Cole "informed me I was going to jail." Pet. for Writ of Habeas Corpus at 1, *Salter v. Montana*, No. OP 14-0784 (Mont. Dec. 5, 2014), *cited in* Am. Pet. at 4 ¶ 12, *available at* http://supremecourtdocket.mt.gov (accessed Dec. 9, 2015).

Both of Salter's descriptions of what occurred, as well as the State's description, show that a reasonable innocent person would not have felt free to leave. *See State v. Thornton*, 708 P.2d 273, 277-78 (Mont. 1985) ("the standard for an arrest when there is not a physical restraint . . . is whether a reasonable person, innocent of any crime, would have felt free to walk away under the circumstances."); Mont. Code Ann. §§ 45-7-306(1)(a)(ii), 46-1-202(17).

Salter cites a portion of the escape statute to show that being on probation or parole, being released on bail, and being unlawfully arrested generally do not constitute official detention. Mont. Code Ann. § 45-7-306(1)(b); *see also, e.g.*, *State v. Romannose*, 931 P.2d 1304, 1307-08 (Mont. 1997). Had Salter failed to appear for an appointment with Cole, § 306(1)(b) likely would have precluded an escape charge. But, even by his own allegations, Salter was constructively

10

restrained by Cole pursuant to arrest and impending transport to jail. *See, e.g.*, Am. Pet. at 4 ¶ 13A(i) (Salter alleges Cole "said 'Let's go'"); Pet. for Writ of Habeas Corpus at 1, *Salter v. Montana*, No. OP 14-0784 (Mont. Dec. 5, 2014) (Salter alleges Cole "informed me I was going to jail"); Change of Plea Tr. (Doc. 9-6) at 4:1-8 (Salter agrees he ran away "after being arrested"). Salter's conduct is accurately described by § 306(1)(a)(ii), not (1)(b).

As Salter has already alleged multiple versions of what "really" happened, any future version he may allege will lack credibility. This claim should be denied because the facts Salter alleges do not support an inference that his custody violates federal law. 28 U.S.C. § 2254(a).

### B. Misdemeanor or Felony Escape

Salter claims he should have been convicted of misdemeanor escape, not felony escape. *Compare* Mont. Code Ann. § 45-7-306(3)(a), (b), *with id.* § -306(3)(c). Escape is a felony offense if it is committed after the person has "been charged with or convicted of a felony." *Id.* § -306(3)(b). At the time he escaped, Salter had been charged with a felony bad-check offense. Therefore, the escape he committed was also a felony. This claim should be denied because the facts Salter alleges do not support an inference that his custody violates federal law. 28 U.S.C. § 2254(a).

## C. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Salter must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### 1. Failure to Investigate or Present Video Footage

As pointed out above, with respect to the escape case, the State did not allege that Salter was physically restrained or in jail when he escaped. Counsel could not have been ineffective for failing to present evidence to dispute a fact not at issue. Salter does not identify any other fact that counsel failed to discover and that would have tended to negate the State's case or support an affirmative defense. His claim that counsel failed to investigate the escape charge should be denied.

As to the custodial interference case, Salter alleges that counsel did not explain to him "the State's lack of evidence" and did not "property investigate the alleged crime." Other than Salter's claim that he had an affirmative defense to the charge, which will go forward, Salter identifies nothing lacking in the State's evidence and nothing that counsel could profitably have investigated. Neither

12

prong of the *Strickland* test is met. This claim should be denied.

### 2. Inaccurate Advice Regarding Likely Sentence

As to both charges, Salter claims he pled guilty because counsel told him that unless he pled guilty he "would be looking at a P.F.O. charge that would carry 40+ years." Am. Pet. at 5 ¶ 14B(i). If Salter had been designated a persistent felony offender, he would have been sentenced to at least five years in prison, with none of that time suspended,[2] and would have faced a maximum penalty of 100 years instead of ten. Mont. Code Ann. § 46-18-502(1). But, because a persistent felony offender must be at least 21 years old and Salter was only 18, Salter could not be a persistent felony offender. *Id.* § -502(1).

Contrary to Salter's current claims, the record created in state court shows that he knew his age made a persistent felony offender designation inapplicable in both cases. Plea of Guilty and Acknowledgment of Rights (15-20-M Doc. 9-10, 15-23-M Doc. 8-10) at 2 ¶¶ B(6), (7); *see also* Evid. Hr'g Tr. (15-20-M Doc. 14-1, 15-23-M Doc. 13-1) at 11:22-12:19; Acknowledgment of Rights (15-20-M Doc. 89-8, 15-23-M Doc. 8-7) at 3 ¶¶ 6, 8. Neither prong of the *Strickland* test is met. This claim should be denied.

### 3. Counsel's Surgery

Salter claims he was sentenced in both cases "the day after" counsel

---

[2] Exceptions can be made, but none were likely. *See* Mont. Code Ann. § 46-18-222.

13

underwent brain surgery. At the evidentiary hearing in state court, counsel testified that his surgery occurred on September 13, 2010. Evid. Hr'g Tr. (Doc. 14-1) at 33:7-15. Salter was sentenced six weeks later, on October 27, 2010. Change of Plea and Sentencing Tr. (Doc. 9-6) at 1, 8:15-24.

Salter does not allege facts sufficient to support an inference that any aspect of his plea or sentence was affected by counsel's surgery. *See also* Evid. Hr'g Tr. at 42:7-43:1, 44:1-19, 46:20-48:6; Order Denying Mot. to Withdraw Guilty Plea (Doc. 9-22) at 3. Neither prong of the *Strickland* test is met. This claim should be denied.

### 4. Filing of Motion to Dismiss

Finally, Salter claims counsel was ineffective in the custodial interference case because he advised Salter to plead no-contest even though counsel had filed a motion to dismiss. The success of the motion to dismiss, however, depended on how one viewed the facts of the case. Counsel contended that "neither Salter nor Higgins 'enticed,' took or withheld [K.] from legal authority. She did this on her own account." Krutilla Aff. Supp. Ex. Mot. to Dismiss at 2 (15-23-M Doc. 8-20 at 4). What the facts are and how to interpret them is usually a jury issue in a criminal case; it was at least unlikely the trial court would, before trial, hear all the facts, make findings, and draw legal conclusions about the statute's application to Salter's conduct. *See, e.g.*, Mont. Code Ann. § 46-13-104(1); *State v. Huerta*, 947

P.2d 483, 491-92 (Mont. 1997).

Moreover, Salter acknowledged that he and counsel had "discussed the merits of my case" and "the likely outcome of a trial." He also acknowledged that he was "unwilling to state that I committed the acts which would constitute guilt of the offense charged" but believed "after reviewing the evidence that a factual basis exists for my plea" and "it would be in my best interests to enter a plea." Plea of Guilty and Waiver of Rights (15-23-M Doc. 8-10) at 3 ¶¶ 3, 5; *id.* at ¶ D. In sum, Salter acknowledged in the document that at least some of the State's evidence suggested to a reasonable person that Salter "enticed" K. to leave her parents' home. Consequently, neither the filing nor the abandonment of the motion to dismiss was unreasonable, even if, for example, the trial judge might have found the affidavit in support of the information did not adequately allege the "enticement" element. *See, e.g., Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973).

Neither prong of the *Strickland* test is met. This claim should be denied.

### V. Certificate of Appealability

Because one claim in Cause No. CV 15-23-M requires an Answer, no ruling will be recommended at this time regarding a certificate of appealability as to any claims in that case. All claims in the escape case, however, Cause No. CV 15-20-M, are recommended for denial.

15

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Salter contends that his conduct did not meet the legal definition of escape, but it did. Salter objects that he should have been convicted of a misdemeanor, but the applicable statute says he committed a felony. His claims of ineffective assistance of counsel fail because counsel was not required to investigate irrelevant facts; because Salter was correctly advised that a persistent felony offender designation was not applicable to him; and because counsel did not represent him at sentencing "the day after" undergoing brain surgery, but six weeks after the surgery, with no identified or discernible ill-effects.

Although procedural bars and time bars likely apply as well, none of Salter's allegations against his conviction for escape support a reasonable inference that any of his constitutional rights were violated. Reasonable jurists would find no

basis to encourage further proceedings in Cause No. CV 15-20-M. A COA should be denied.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1. All claims in the Amended Petition (Doc. 3) in Cause No. CV 15-20-M should be DENIED on the merits.

2. Except as to Salter's claims regarding an affirmative defense to the charge of conspiracy to commit custodial interference, all other claims in the Petition (Doc. 1) in Cause No. CV 15-23-M should be DENIED on the merits.

3. A COA should be DENIED on all claims in Cause No. CV 15-20-M.

4. The Clerk should enter, by separate document filed in Cause No. CV 15-20-M, judgment in favor of Respondents and against Petitioner.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Salter may object to this Findings and Recommendation within 14 days.[3] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Salter must immediately notify the Court of any change in his mailing</u>

---

[3] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 16th day of December, 2015.

*/s/ Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge